United States District Court
Southern District of Texas
**ENTERED**
July 17, 2018
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| FRANCISCA EULALIA RAMIREZ | § | |
| | § | |
| Plaintiff. | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 3:17–CV–00336 |
| | § | |
| NANCY A. BERRYHILL, ACTING | § | |
| COMMISSIONER OF THE SOCIAL | § | |
| SECURITY ADMINISTRATION | § | |
| | § | |
| Defendant. | § | |
| | § | |

## MEMORANDUM AND RECOMMENDATION

Plaintiff Francisca Eulalia Ramirez ("Ramirez") seeks judicial review of an administrative decision denying her disability insurance benefits under Title II of the Social Security Act (the "Act"), 42 U.S.C. § 401 *et seq.*, and for supplemental security benefits under Title XVI of the Act, 42 U.S.C. § 1381 *et seq*.

All dispositive pretrial motions in this case have been referred to this Court for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (Dkt. 6). Before the Court are competing Motions for Summary Judgment filed by Ramirez and Defendant Nancy A. Berryhill, the Acting Commissioner of the Social Security Administration (the "Commissioner"). (Dkt. Nos. 8, 16). Having considered the motions, responsive briefing, and applicable law, the Court RECOMMENDS that Ramirez's Motion for Summary Judgment (Dkt. 8) be GRANTED, Commissioner's Motion for Summary

Judgment (Dkt. 16) be DENIED, and the case be REMANDED for reconsideration in accordance with this opinion and applicable law.

## I.  BACKGROUND

Ramirez filed a claim for social security disability benefits under Title II and Title XVI of the Act, alleging disability as of September 4, 2007.  Ramirez's applications were initially denied, and denied again upon reconsideration.  Subsequently, an administrative law judge ("ALJ") held a hearing and found Ramirez was not disabled.  Ramirez filed an appeal with the Appeals Council.  The Appeals Council denied review, making the ALJ's decision final.  This appeal followed.

## II.  APPLICABLE LAW

Section 405(g) of the Act governs the standard of review in disability cases.  *See Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002).  The Commissioner's decision to deny social security benefits is reviewed by the federal courts to determine whether (1) the Commissioner applied the proper legal standard, and (2) the Commissioner's factual findings are supported by substantial evidence.  *See Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000).  "To be substantial, evidence must be relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla but it need not be a preponderance."  *Fraga v. Bowen*, 810 F.2d 1296, 1302 (5th Cir. 1987) (citation omitted).  "Judicial review is to be deferential without being so obsequious as to be meaningless."  *Taylor v. Bowen*, 782 F.2d 1294, 1298 (5th Cir. 1986).

"[A] claimant is disabled only if she is incapable of engaging in any substantial gainful activity." *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992) (citation, internal quotation marks, and emphasis omitted).

To determine if a claimant is disabled, the ALJ uses a sequential, five-step approach:

> (1) whether the claimant is presently performing substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the impairment prevents the claimant from doing past relevant work; and (5) whether the impairment prevents the claimant from performing any other substantial gainful activity.

*Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018) (quoting *Kneeland v. Berryhill*, 850 F.3d 749, 753 (5th Cir. 2017)).

"The claimant bears the burden of proof on the first four steps, but the Commissioner bears the burden on the fifth step." *Salmond*, 892 F.3d at 817 (citation omitted). "Before reaching step four, the Commissioner assesses the claimant's residual functional capacity ('RFC'). The claimant's RFC assessment is a determination of the most the claimant can still do despite his or her physical and mental limitations and is based on all relevant evidence in the claimant's record. The RFC is used in both step four and step five to determine whether the claimant is able to do her past work or other available work." *Kneeland*, 850 F.3d at 754 (citations and internal quotation marks omitted).

The Commissioner's decision must stand or fall with the reasons stated in the ALJ's final decision. *See Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000). *Post hoc*

rationalizations for an agency decision are not to be considered by a reviewing court.  *See SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947).  "The reviewing court may not reweigh the evidence, try the questions *de novo*, or substitute its judgment for the Commissioner's, even if it believes the evidence weighs against the Commissioner's decision.  Conflicts in the evidence are for the Commissioner, not the courts, to resolve." *Pennington v. Comm'r of Soc. Sec. Admin.*, No. 3:16-CV-230, 2017 WL 4351756, at *1 (S.D. Tex. Sept. 29, 2017) (citing *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002)).

### III.  THE ALJ'S DECISION

The ALJ found at step one that Ramirez had not engaged in substantial gainful activity since September 4, 2007.

The ALJ found at step two that Ramirez had the following severe impairments: obesity, emphysema, degenerative disc disease, carpal tunnel syndrome, fibromyalgia, and sleep apnea.

At step three, the ALJ found that none of these impairments met any of the Social Security Administration's listed impairments.

Prior to consideration of step four, the ALJ assessed Brooks's RFC, as follows:

> 5.   After careful consideration of the entire record, I find the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a).  The claimant is able to lift and carry 10 pounds occasionally and 5 pounds frequently, stand and walk about 2 of 8 hours each and sit six of 8 hours for a full 8 hour day.  The claimant has generally unlimited abilities to push and pull and unlimited gross and fine dexterity, except for frequently pushing with the lower extremities, bilaterally and frequent hand use, bilaterally.  Although the claimant is able to occasionally climb stairs, she cannot climb ladders, ropes, or scaffolds.  She cannot run.  The claimant is able to occasionally bend, stoop, crouch, crawl, balance, twist, and squat.  The claimant is able to tolerate occasional exposure to dust, fumes, gases, chemicals, heights, dangerous machinery, and uneven surfaces.  The claimant has no mental impairment.

(Dkt. 5-3 at 15).  At step four, based on this RFC, the ALJ found that Ramirez "is unable to perform any past relevant work."  (*Id.* at 23).

Lastly, at step five, the ALJ considered Ramirez's RFC, age, education, and work experience to determine if there was any other work she could do.  At the time of the ALJ's hearing, Ramirez was 46 years old, with a high school education, and had previously worked as a bartender.  Based on the relevant factors, the ALJ concluded "there are jobs that exist in significant numbers in the national economy that [Ramirez] can perform."  (Dkt. 5-3 at 23).  Accordingly, the ALJ determined that Ramirez was not disabled under the Act and was not entitled to benefits.

## IV. DISCUSSION

This appeal raises two issues: (1) whether the ALJ failed to properly weigh the opinions of treating Physician Assistant Lucia Tran ("P.A. Tran") and treating neurologist Dr. Mohamed Khalil ("Dr. Khalil") when determining Ramirez's RFC; and (2) whether the ALJ failed to properly evaluate Ramirez's testimony.  The Court addresses each issue and then, separately, considers the issue of harmless error.

## A.  OPINION OF OTHER MEDICAL SOURCE

Ramirez asserts that the ALJ erred in giving P.A. Tran's opinion little weight and failing to acknowledge that P.A. Tran's report was co-signed by supervising physician Yvette Poindexter, M.D. ("Dr. Poindexter").  Specifically, Ramirez argues that "[t]he ALJ's conclusion that the opinions from … treating P.A. Tran co-signed by Dr. Poindexter are not supported by clinical or objective evidence is a gross mischaracterization of the record … [because] the report completed by Dr. Poindexter and P.A. Tran were based on the neurological medical records."  (Dkt. 9 at 15).

**Requirements for Giving Weight to Other Sources:**  Federal regulations create a broad framework for ALJs to follow in making their decisions.  The regulations classify evidence from medical sources into two categories: "acceptable medical sources" and "other sources."  20 C.F.R. § 416.913(a), (d) (2013).[1]  "Acceptable medical sources" include licensed physicians and certain other listed medical practitioners, but not physician assistants.  § 416.913(a)(1)–(5).  "Other sources" are the remaining sources not listed above, including physician assistants.  § 416.913(d)(1).  Evidence from "other sources" can be used to support findings of the severity of an impairment and effect on a claimant's ability to work.  § 416.913(d); *see also Porter v. Barnhart*, 200 F. App'x 317, 319 (5th Cir. 2006).

"In considering opinions from such 'other sources,' the ALJ may consider factors such as (1) the nature and extent of the relationship between the source and the

---

[1] 20 C.F.R. § 416.913 was reformulated effective March 27, 2017.  However, in this opinion the Court refers to the 2013 regulations, which applied at the time of the ALJ's determination, rather than to their recently-updated 2017 version.

individual; (2) the source's qualifications; (3) the source's area of speciality or expertise; (4) the degree to which the source presents relevant evidence to support his or her opinion; (5) whether the opinion is consistent with other evidence; and (6) any other factors that tend to support or refute the opinion." *Precour v. Colvin*, No. 3:12-CV-2666-L, 2013 WL 4007771, at *5 (N.D. Tex. Aug. 6, 2013) (citing 20 C.F.R. §§ 404.1527(c) and 416.927(c)).  These factors are sometimes referred to as the *Newton* factors, which is a reference to the Fifth Circuit's landmark ruling requiring ALJs to consider each of the 20 C.F.R. § 404.1527(c) factors.  *See Newton,* 209 F.3d at 456.  "[T]he hearing officer is not required to consider every weight determining factor[,] however, he should examine those factors applicable to the particular circumstances of a given case." *Ihde v. Colvin*, 270 F. Supp. 3d 956, 963 (W.D. Tex. 2017) (citations omitted).  The ALJ's "decision should sufficiently discuss the weight factors to establish why he rejected opinion evidence; [but his decision] cannot be 'devoid of any degree of specific consideration' of the opinion evidence." *Id*. (quoting *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 541 (6th Cir. 2007)).  *See also* SSR 06-03P, 2006 WL 2329939, at *4 (Aug. 9, 2006) (explaining that "[a]lthough there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision, the adjudicator generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence … allows a claimant or subsequent reviewer to follow the adjudicator's reasoning").[2]  And "[a]lthough an ALJ

---

[2] On March 27, 2017, the Social Security Administration rescinded Social Security Ruling 06–03p for all claims brought on or after that date.  Rescission of Social Security Rulings 96–2p,

may assign little weight to an 'acceptable medical source' only upon a showing of good cause, [the Fifth Circuit has] not imposed a good cause requirement to discount medical opinions from 'other sources.'"  *Young v. Berryhill*, 689 F. App'x 819, 822 (5th Cir. 2017).

**Weight Given P.A. Tran:**  P.A. Tran began treating Ramirez on January 5, 2013, and continued to see Ramirez every 1–2 months for over a year.  The ALJ recognized that P.A. Tran diagnosed Ramirez with "cervical degenerative disc disease and peripheral neuropathy."  (Dkt. 5-3 at 20).  On September 4, 2014, P.A. Tran completed a Disability Impairment Questionnaire ("DIQ").  In the DIQ, P.A. Tran said she expected Ramirez's symptoms to last at least 12 months.  P.A. Tran listed Ramirez's diagnoses and explained the pain Ramirez experienced as a direct result of her diagnosed conditions:



---

96–5p, and, 06–3p, 82 Fed. Reg. 15263–01 (Mar. 27, 2017).  Ramirez, however, filed her initial applications for a period of disability and disability insurance benefits on April 14, 2014, filed a written request for hearing on October 21, 2014, and received a decision from the ALJ for her claim on September 28, 2016.  (Dkt. 5-3 at 12, 24).  Therefore, these rulings remain applicable for the purposes of this case.  *See* 82 Fed. Reg. 15263–01.

**4a.** Patient's primary symptoms:

_Neck pain and pain in limb, back pain._

**4b.** If your patient has pain, please address the following:

Nature of pain: _PF Cervical disc protrusion and foraminal stenosis._

Location of pain: _neck, legs, back,_

Frequency of pain: _Daily._

Factors that precipitate and/or aggravate pain: _medication help with pain and activity exac exacerbate pain_

(Dkt. 5-16 at 43–44).   Based on this assessment, P.A. Tran identified the following

physical limitations:

- Ramirez's ability to perform work in a competitive environment on a sustained and ongoing basis (8 hours per day, 5 days per week) is limited to less than an hour for jobs in a seated position and jobs in a standing and/or walking position.

- It is medically necessary for Ramirez to avoid continuous sitting in an 8 hour workday.  Ramirez must get up from a seated position to move around every 5–10 minutes and cannot return to a seated position for an hour.

- Ramirez can never lift or carry any weight.

- Ramirez has significant limitations in reaching, handing, and fingering. She can never grasp, turn, or twist objects; and never use her arms for reaching.  She can occasionally (up to 1/3 of an 8 hour workday) use her hands/fingers for fine manipulations.

- It is likely Ramirez's symptoms will increase if she is placed in a competitive work environment because her health issues will increase.  In an average 8 hour workday, Ramirez would frequently (from 1/3–2/3 of an 8 hour workday) experience pain, fatigue, or other symptoms severe enough to interfere with her attention and concentration.

9

- During an 8 hour workday, Ramirez would need to take unscheduled breaks every 5–10 minutes.  She would need to rest for an hour before returning to work.

- Due to her impairments or treatment, Ramirez would likely be absent from work more than three times a month.

At the end of the DIQ, Dr. Poindexter's signature appears next to P.A. Tran's signature.[3]

**ALJ's Reasons for Assigning P.A. Tran's Opinion Little Weight:**  The ALJ assigned little weight to P.A. Tran's opinion.   In assigning P.A. Tran's opinion little weight, the ALJ offers this explanation:

> Tran's opinion is given little weight because it is unsupported by objective clinical findings and is inconsistent with the evidence considered as a whole.  Specifically, on July 26, 2013, an EMG and nerve conduction study showed *very mild* left median neuropathy at the wrist (Exhibit 14F, page 44).  There was *mild* chronic inactive denervation in the muscles innervated by the right C6-7 roots.  As late as February 27, 2014, just a few months before Mr. Tran's opinion of September 2014, the claimant was found to have *very mild* carpal tunnel syndrome and inactive radiculopathy (Exhibit 4F, page 16).  The claimant was wearing wrist splints, which were helpful.  The claimant's gait was normal to tandem walking and heel and toe walking (Exhibit 4F, page 17).  The Romberg was negative.  Even later, on July 13, 2015, an MRI scan of the claimant's lumbar spine showed *very mild* loss of disc height at L5-SI without focal abnormality of the thecal sac or nerve roots.  The joints were *mildly* degenerated at this level.  There were no osseous abnormalities.  The cauda equina and conus medullaris were *normal* (Exhibit 14F, page 47).  Accordingly, based on these progress notes and objective tests, Mr. Tran's opinion has no credibility and is inconsistent with the medical record.  I must therefore, give it little weight.

(Dkt. 5-3 at 20–21).

---

[3] Ramirez argues the ALJ erred by failing to acknowledge that P.A. Tran's DIQ was "co-signed by Dr. Poindexter," P.A. Tran's supervising physician.  (Dkt. 9 at 15).  It is accurate to say the ALJ did fail to mention that P.A. Tran's DIQ was co-signed by Dr. Poindexter, but this is irrelevant.  Although P.A. Tran treated Ramirez on numerous occasions, there is no evidence that Dr. Poindexter ever saw Ramirez or even reviewed the medical records prior to signing the DIQ. Moreover, to the Court's knowledge, there is no Fifth Circuit precedent providing that an ALJ must give greater credence to an "other source's" opinion simply because it is co-signed by a physician.

The ALJ was required to evaluate P.A. Tran's opinion through the lens of the *Newton* factors set out above.[4]  Although an ALJ is not always required to discuss each *Newton* factor, an ALJ must, at a bare minimum, discuss the factors applicable to the particular circumstances involved in the case.[5]  Because the ALJ asserted that P.A. Tran's opinion is "unsupported by objective clinical findings and is inconsistent with the evidence as a whole," the ALJ was required to explain the degree to which P.A. Tran presented relevant evidence to support her opinion (factor four) and whether P.A. Tran's opinion is consistent with other evidence (factor five).  (Dkt. 5-3 at 20).  He did not adequately do so.

In support of his decision to assign P.A. Tran's opinion little weight, the ALJ offered a litany of medical tests and attendant medical jargon, but he did not point to any portion of the record that explained or opined on what those specific tests actually meant in relation to Ramirez's ability to work in a competitive environment on a sustained and ongoing basis.  Indeed, the ALJ rejected the opinion of P.A. Tran without any contrary opinion from an examining or treating source.  Succinctly stated, the ALJ merely listed

---

[4] "[A]s clarified in SSR 06-03p, the ALJ must apply the general guidance those regulations provide with respect to opinions from other medical sources.  This means that ALJs should … evaluate opinions from other medical sources through the lens of the regulatory factors set out in 20 C.F.R. §§ 404.1527(c) and 416.927(c), while remaining cognizant that not every factor will apply to every case."  *Jorgensen v. Berryhill*, No. 4:15-CV-0889-O-BL, 2017 WL 785805, at *13 (N.D. Tex. Feb. 9, 2017), *report and recommendation adopted*, No. 4:15-CV-0889-O, 2017 WL 770617 (N.D. Tex. Feb. 28, 2017).  Here, the ALJ acknowledges that P.A. Tran is not an "acceptable medical source" and states he considers her opinion in accordance with Social Security Ruling 06-03p.

[5] Although the ALJ lists the *Newton* factors, he did not address all of the factors.  In her briefing, the Commissioner attempts to fill the gaps in the requisite *Newton* analysis.  However, this Court cannot consider *post hoc* rationalizations.  *See Chenery Corp.*, 332 U.S. at 196.

the results of medical tests without providing evidentiary support for his synthesis of the tests. Because the significance of the identified tests in relation to Ramirez's ability to work is not facially apparent, and the ALJ did not rely on the opinion of another examining or treating source, the ALJ's determination that the objective clinical findings do not support P.A. Tran's opinion and are inconsistent with the evidence as a whole must be based on his lay opinion. The ALJ is not permitted to play doctor in this fashion, and his decision to do so was error. *See Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003) ("judges, including administrative law judges of the Social Security Administration, must be careful not to succumb to the temptation to play doctor") (citation omitted). Moreover, the ALJ failed to discuss the fact that P.A. Tran's opinion is consistent with the medical opinion of Dr. Khalil, Ramirez's treating specialist.[6] Given that Dr. Khalil's opinion is the sole opinion offered by a treating specialist regarding Ramirez's ability to work, the ALJ's failure to discuss the consistency of Dr. Khalil's opinion with P.A. Tran's opinion was an additional error.

In light of the errors discussed above, the Court finds that the ALJ's decision to afford P.A. Tran's opinion little weight was erroneous and not supported by substantial evidence.

---

[6] The ALJ may have failed to discuss the consistency between P.A. Tran's opinion and Dr. Khalil's opinion because he assigned Dr. Khalil's opinion little weight. Even if this is the ALJ's reason, his error remains because, as discussed below, the ALJ also erroneously discounted the opinion of Dr. Khalil.

## B. OPINION OF TREATING PHYSICIAN

Ramirez contends that, when determining her RFC, the ALJ improperly afforded Dr. Khalil's medical opinion little weight. Ramirez argues that the ALJ erred when he failed to apply the *Newton* factors and contends that the ALJ's stated explanation for discounting Dr. Khalil's medical opinion (that the opinion is inconsistent with the medical record) is a "gross mischaracterization of the record." (Dkt. 9 at 15).

**Requirements for Giving Weight to a Treating Physician:** The opinion of a claimant's treating physician is entitled to great weight. *See Newton*, 209 F.3d at 455–56; *Leggett v. Chater*, 67 F.3d 558, 566 (5th Cir. 1995); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). Indeed, "[a] treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with … other substantial evidence.'" *Martinez v. Chater*, 64 F.3d 172, 175–76 (5th Cir. 1995) (quoting 20 C.F.R. § 404.1527(d)(2)). "An ALJ is free to reject a physician's opinion when good cause exists. 'Good cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence.'" *Giles v. Astrue*, 433 F. App'x 241, 246–47 (5th Cir. 2011) (quoting *Newton*, 209 F.3d at 455). If good cause arises, the treating physician's opinions are "not only not conclusive in these proceedings, but may be rejected when the evidence supports a contrary

conclusion." *Johnson v. Astrue*, No. 4:11-CV-03652, 2013 WL 5785600, at *9 (S.D. Tex. Apr. 10, 2013) (internal quotation marks and citations omitted).

**Factors to be Considered Before Declining to Give Treating Physician's Opinion Controlling Weight:** The Social Security Administration's regulations provide that the ALJ "will always give good reasons in [its] notice of determination or decision for the weight [it gives the claimant's] treating source's opinion." 20 C.F.R. § 404.1527(c)(2). In the event the ALJ determines that the treating physician's opinion is not entitled to controlling weight, the regulations require the ALJ to consider six specific factors to assess the weight to be given to the opinion of a treating physician. *See* 20 C.F.R. § 404.1527(c). Specifically, the ALJ must consider: (1) examining relationship; (2) treatment relationship; (3) supportability of the medical opinion; (4) consistency; (5) specialization of the physician; and (6) other factors. *See id. See also Newton*, 209 F.3d at 456 (stating the Fifth Circuit requires consideration of each of the 20 C.F.R. § 404.1527(c) factors). These are the same *Newton* factors discussed above.

In *Newton*, the Fifth Circuit concluded that "an ALJ is required to consider each of the § 404.1527[(c)] factors before declining to give any weight to the opinions of the claimant's treating specialist." 209 F.3d at 456. But, in subsequent decisions construing *Newton*, the Fifth Circuit has explained that "[t]he *Newton* court limited its holding to cases where the ALJ rejects the sole relevant medical opinion before it." *Qualls v. Astrue*, 339 F. App'x 461, 467 (5th Cir. 2009). Therefore, where there is competing first-hand medical evidence (i.e., competing opinions of treating or examining physicians), and the ALJ finds as a factual matter that one doctor's opinion is more well-founded than

14

another, the ALJ need not necessarily set forth an analysis of the Section 404.1527(c) factors when declining to give controlling weight to a treating physician. *See id.* at 466– 67. "Stated differently, the detailed analysis under *Newton* is not necessary when the ALJ has weighed the treating physician's opinion against opinions of other treating or examining physicians who have specific medical bases for a contrary opinion." *Nordin v. Comm'r, SSA*, No. 4:16-CV-00830-CAN, 2018 WL 1536897, at *4 (E.D. Tex. Mar. 28, 2018).

**Weight Given to Dr. Khalil's Opinion:**   Dr. Khalil began treating Ramirez on June 16, 2014, and saw Ramirez every four to six weeks.  On January 8, 2015, Dr. Khalil diagnosed Ramirez with the following: "fibromyalgia, cervical spondylosis, and carpal tunnel syndrome.  The claimant was overweight. Additionally, the claimant had vitamin D deficiency, cervicalgia, and entrapment neuropathy."   (Dkt. 5-3 at 21–22).   He completed a Spinal Impairment Questionnaire ("SIQ") on January 1, 2015.  In the SIQ, Dr. Khalil stated that he expected Ramirez's symptoms to last at least 12 months.  He further explained his diagnoses and the various forms of pain Ramirez experienced as a direct result of the diagnosed conditions:



15

(Dkt. 5-18 at 66).  Dr. Khalil stated that his diagnoses are supported by the following

imaging and diagnostic tests:



(*Id.*).   In addition, Dr. Khalil identified several clinical findings that supported his

diagnoses:

(*Id.* at 67–68).  After explaining all of this, Dr. Khalil assessed the following physical

limitations:

- Ramirez's ability to perform work in a competitive environment on a sustained and ongoing basis (8 hours per day, 5 days per week) is limited to less than an hour for jobs in a seated position and jobs in a standing and/or walking position.

- It is medically necessary for Ramirez to avoid continuous sitting in an 8 hour workday.

- Ramirez can occasionally (up to 1/3 of an 8 hour workday) lift 0–5 pounds. She can never lift over 5 pounds and she can never carry anything.

- Ramirez has significant limitations in reaching, handing, and fingering. She can occasionally (up to 1/3 of an 8 hour workday) grasp, turn, and twist objects; use her hands/fingers for fine manipulations; and use her arms for reaching.

- It is likely Ramirez's symptoms will increase if she is placed in a competitive work environment.  In an average 8 hour workday, Ramirez would frequently (from 1/3–2/3 of an 8 hour workday) experience pain, fatigue, or other symptoms severe enough to interfere with her attention and concentration.

- During an 8 hour workday, Ramirez would need to take unscheduled breaks every 15 minutes.  She would need to rest between 15–20 minutes before returning to work.

- Due to her impairments or treatment, Ramirez would likely be absent from work more than three times a month.

**ALJ's Reasons for Assigning Dr. Khalil's Opinion Little Weight:** Despite Dr. Khalil's clear status as Ramirez's treating specialist, the ALJ assigned little weight to Dr. Khalil's opinion, offering this threadbare explanation:

> For the reasons stated above in relation to Mr. Trans opinion, this opinion must be given little weight as well as unsupported nor consistent with the objective medical record and progress notes. Specifically, the claimant's orthopedic examinations have been normal. On June 30, 2014, Dr. Khalil examined the claimant (Exhibit 14F, page 34). Dr. Khalil reported that the claimant's gait was normal. The claimant's monofilament testing was normal. The claimant had normal strength bilaterally except the deltoid and biceps muscles. The claimant's reflexes were 2+ bilaterally and symmetric. The claimant had normal sensation. Thus, there is no support for the drastic limitations set forth in the opinion.
>
> The claimant's chronic obstructive pulmonary disease and sleep apnea have been controlled with treatment. The claimant has only mild carpal tunnel syndrome that has not required surgery. On February 27, 2014, the claimant had very mild carpal tunnel syndrome and inactive radiculopathy (Exhibit 4F, page 16). The claimant was wearing wrist splints, which were helpful. The claimant's gait was normal to tandem walking and heel and toe walking (Exhibit 4F, page 17). The Romberg was negative.
>
> Again, the medical evidence of record does not support such extreme limitations opined by Dr. Khalil. Accordingly, Dr. Khalil's opinion is given little weight.

(Dkt. 5-3 at 22). In discounting Dr. Khalil's opinion, the ALJ does not identify, cite, or otherwise demonstrate his reliance on any specific controverting or competing medical opinions, treatment notes, or clinical observations from another treating or examining physician.

The ALJ first attempts to "incorporate" the reasons he offered in affording P.A. Tran's opinion little weight as reason to afford Dr. Khalil's opinion little weight. As explained above, the ALJ erred in discounting P.A. Tran's opinion. Thus, those same

18

reasons are insufficient to justify the ALJ's rejection of the Dr. Khalil's opinion—especially since, as a treating physician, Dr. Khalil's opinion is presumptively entitled to controlling weight.[7]

Based on the Court's review of the record, Dr. Khalil is the only treating physician that specifically offered an opinion regarding Ramirez's ability to perform certain physical activities in a competitive environment on a sustained and ongoing basis. In support of his conclusory statement that Dr. Khalil's opinion is unsupported and inconsistent with the objective medical record and progress notes, the ALJ cites to a paltry three pages of the medical records. The ALJ identifies specific tests that, in his view, contradict Dr. Khalil's conclusion that Ramirez faced "drastic [physical] limitations."[8] (Dkt. 5-3 at 22). Again, as in his discussion of P.A. Tran's opinion, the ALJ employs medical jargon but does not point to any portion of the record that explains on what these specific tests actually convey in relation to Ramirez's ability to work. The ALJ also neglects to mention that Dr. Khalil reviewed the same tests the ALJ reviewed. These facts, taken together, indicate that any "inconsistency" that the ALJ believes exists

_____

[7] Notably, the medical records the ALJ specifically discussed in relation to rejecting the opinion of Dr. Khalil are nearly identical to the records he discussed in rejecting the opinion of P.A. Tran.

[8] The ALJ identifies the following tests in his discussion of Dr. Khalil's opinion: "orthopedic examinations have been normal"; "monofilament testing was normal"; and "the Romberg was negative." (Dkt. 5-3 at 22). In his discussion of P.A. Tran's opinion, the ALJ identifies additional tests including: "an EMG and nerve conduction study showed very mild left median neuropathy at the wrist"; "an MRI scan of the claimant's lumbar spine showed very mild loss of disc height at L5-SI without focal abnormality of the thecal sac or nerve roots [and] [t]he joints were mildly degenerated at this level"; "a chest X-ray showed no acute infiltrates, effusion, or congestion"; "a CT scan of the claimant's chest showed only mild centrilobular emphysema"; "a nuclear stress test showed that the claimant had no ischemia or infarction"; and "a CT scan showed that the claimant had chronic obstructive pulmonary disease." (*Id.* at 20–21).

19

is not one between Dr. Khalil's medical opinion and the objective medical evidence; it is one between Dr. Khalil's medical opinion and the ALJ's lay interpretation of the objective medical evidence.  The ALJ is unqualified to play doctor, and thus, he offered an insufficient reason to discount the opinion of Dr. Khalil.  *See Franco v. Colvin*, No. CV H-15-2443, 2016 WL 7736851, at *17 (S.D. Tex. Aug. 12, 2016), *report and recommendation adopted*, No. CV H-15-2443, 2016 WL 4565669 (S.D. Tex. Sept. 1, 2016) ("the ALJ is effectively 'playing doctor' and making a medical determination, something he is not qualified to do").

Moreover, contrary to the ALJ's assertion, Dr. Khalil's progress reports do not actually conflict with the physical limitations detailed in the SIQ.  The ALJ cannot choose to reject Dr. Khalil's medical opinion expressed in the SIQ and rely on Dr. Khalil's progress notes because Dr. Khalil's progress notes failed to assess Ramirez's functional limitations in the workplace.  "Medical notes that do not give an opinion on [a] Plaintiff's … limitations in the workplace or what activities [she] would be able to perform do not controvert with the opinion of [the] Plaintiff's treating physician." *Thomas v. Berryhill*, No. 3:16-CV-3453-BT, 2018 WL 1517861, at *5 (N.D. Tex. Mar. 26, 2018) (collecting cases) (internal quotation marks and alterations omitted).

Furthermore, there is no evidence supporting the ALJ's finding that Ramirez can stand and walk for two hours a day and sit for six hours a day in an eight hour workday. The ALJ observed that "the claimant's monofilament testing was normal"; "the claimant's gait was normal to tandem walking and heel to toe walking"; and "the claimant has only mild carpal tunnel syndrome that has not required surgery."  (Dkt. 5-3

20

at 22).  But there is no evidence to suggest that Ramirez could perform light work with these conditions.  *See Williams v. Astrue*, 355 F. App'x 828, 831-832 (5th Cir. 2009) (reversing and remanding where the ALJ rejected the opinions of the claimant's treating physicians and relied on his own medical opinions as to the limitations presented by the claimant's back problems in determining RFC); *Lagrone v. Colvin*, No. 4:12-CV-792-Y, 2013 WL 6157164, at *6 (N.D. Tex. Nov. 22, 2013) ("[T]he ALJ [erred when he] relied on medical evidence that did not contain any opinions regarding the effects of [claimant's] impairments on his ability to perform his work … the ALJ may not play doctor and provide his own opinion as to plaintiff's limitations, especially when that opinion is unsupported by evidence in the record.").

The Court finds that the ALJ has not pointed to any medical evidence or any other substantial evidence in the record to justify his rejection of the treating specialist's opinion.  Thus, the ALJ's reasons for rejecting the opinion of Dr. Khalil do not constitute good cause.

**The *Newton* Factors Analysis:**  In the absence of good cause, an ALJ is required to consider the *Newton* factors, outlined in §404.1527(c), before declining to give controlling weight to a treating specialist's medical opinion.  *See Aguilar v. Berryhill*, No. 5:16-CV-900-DAE, 2018 WL 1833246, at *5 (W.D. Tex. Mar. 22, 2018) ("[A]n ALJ may reject the opinion of a treating physician only if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527[(c)], or when good cause is shown.") (internal quotation marks and citations omitted).  The Commissioner does not argue that the ALJ properly conducted the required analysis

under *Newton*.  Instead, the Commissioner argues that the ALJ did not have to conduct an analysis under the § 404.1527(c) factors because "the ALJ did not choose the opinion of a non-examining physician over [Ramirez's] treating physician's opinion."  (Dkt. 16-1 at 6).  The Commissioner argues that "[f]urthermore, the record in this case contained 'competing first-hand evidence,' including treatment records indicating normal physical findings, that [Ramirez] retained the ability to perform work with additional limitations accommodating [her] mental impairment."[9]  (*Id.*).  This argument lacks merit and has been squarely and repeatedly rejected.  *See Palmer v. Berryhill*, No. 3:16-CV-2197-BF, 2017 WL 2079808, at *5 (N.D. Tex. May 15, 2017) ("The Commissioner's argument that Dr. Hariz's own treatment notes constitute competing first-hand evidence also lacks merit.") (collecting cases); *Thomas*, 2018 WL 1517861, at *4 ("a physician's own records do not constitute competing first hand medical evidence") (citation omitted).  Therefore, under the facts of this case, the ALJ was required to provide a detailed analysis of the six factors.

Although the ALJ lists the *Newton* factors, this Court finds the ALJ did not conduct the requisite six-factor analysis.  Following the ALJ's boilerplate recitation of the *Newton* factors, the ALJ lists instances from Dr. Khalil's progress reports where Ramirez's examinations were normal.  However, nothing in the ALJ's discussion indicates that he undertook his obligation to fully consider each of the *Newton* factors.  This Court is not inclined to scour the ALJ's decision to try to cobble together a cogent six-factor analysis when it is not clear on the face of the decision.  The Court finds that

---

[9] The Court notes that the ALJ did not make a finding of a mental impairment.

because the ALJ failed to conduct the required analysis of the *Newton* factors, the ALJ did not apply the correct legal standard and his decision is not supported by substantial evidence.

## C.  CLAIMANT CREDIBILITY DETERMINATION

As a separate point of error, Ramirez contends that the ALJ failed to give sufficient reasons for affording her testimony little weight.  Specifically, Ramirez argues that the ALJ failed to cite any medical authority to support his conclusion that the diagnostic evidence was inconsistent with her testimony.  In response, the Commissioner asserts that the ALJ correctly considered Ramirez's allegations of disabling symptoms and properly decided to give the testimony little weight because it was not supported by the objective medical evidence.

**Requirements for Giving Weight to Claimant's Testimony:**  "When assessing complaints of pain, the ALJ must determine whether there is a medically determinable impairment that is capable of producing that pain."  *Eovaldi v. Astrue*, 729 F. Supp. 2d 848, 862 (S.D. Tex. 2010) (citing *Ripley v. Chater*, 67 F.3d 552, 556 (5th Cir. 1995)).  "Once the impairment is found, the ALJ evaluates the intensity, persistence and limiting effects of the symptoms on the claimant's ability to do basic work activities."  *Gachter v. Colvin*, No. 4:13-CV-168-Y, 2014 WL 2526887, at *8 (N.D. Tex. June 4, 2014) (citing 20 C.F.R. § 404.1529(c); SSR 96-7p, 1996 WL 37186, at *1).  It is well-settled in the Fifth Circuit that an ALJ's credibility findings of a claimant's subjective complaints are entitled to deference.  *See Chrisner v. Astrue*, 249 F. App'x 354, 356 (5th Cir. 2007) (citing *Newton*, 209 F.3d at 459).  The claimant's claims must be accompanied by

medical signs that could reasonably be expected to produce the pain or other symptoms alleged and that would lead to the conclusion that an individual is disabled. *See* 42 U.S.C. § 423(d)(5)(A). However, "[a]n ALJ's unfavorable credibility evaluation will not be upheld on judicial review where the uncontroverted medical evidence shows a basis for the claimant's complaints unless the ALJ weighs the objective medical evidence and articulates reasons for discrediting the claimant's subjective complaints." *Gachter*, 2014 WL 2526887, at *9 (collecting cases).

**ALJ's Reasons for Assigning Ramirez's Testimony Little Weight:** At the hearing, Ramirez testified that she had debilitating carpal tunnel syndrome, degenerative disc disease, and depression; she could not sit or stand for long periods of time; and she was unable to work because of symptoms related to obesity and emphysema. Ramirez further testified that she experienced lower back pain due to the compressed discs in her neck. She said she did not receive much pain relief from her medications and rated her pain level (on medication) as a six out of ten. When asked how long she could sit, Ramirez stated: "I move around a little bit. It's hard for me to sit still too long. I adjust myself, my, like resting my arm on here it goes numb. My lower back and just sometimes hard [sic] trying to keep my head up when I'm sitting up." (Dkt. 5-3 at 45). She stated that she was unable to stand for very long and she used a riding cart when she went to the grocery store. She explained that she experienced a great deal of pain when she used her hands and arms. She also claimed that she was unable to do a lot of the things she could do before because she experienced muscle spasms and shortness of breath over "any little thing." (*Id.* at 49–50). Although Ramirez testified that she

discussed surgery with her doctors, she said her doctors were not comfortable with performing surgery on her because of the condition of her lungs.

After assessing these complaints and the evidence available, the ALJ determined that the "claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms" but found "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (*Id.* at 16). The ALJ determined that Ramirez had only mild carpal tunnel syndrome, her emphysema was manageable, and she was generally able to do much more than her testimony would suggest. The ALJ subsequently assigned her testimony little weight.

**ALJ's Reasons for Assigning Ramirez's Testimony Little Weight:** The ALJ's explanation for discrediting Ramirez's testimony is insufficient. To be clear, the ALJ merely offers a conclusion: Ramirez's testimony is not entirely consistent with the evidence in the record "for the reasons explained in this decision." (*Id.*). The ALJ does not provide "reasons" explaining how Ramirez's testimony is inconsistent with the medical evidence. Instead, he simply documents Ramirez's medical history.[10] The ALJ

---

[10] The ALJ pointed to medical evidence that he claimed proved inconsistent with Ramirez's testimony including: "a physical examination showed Ramirez had a normal gait and her muscle power was normal"; "an EMG showed a mild to moderate pinched nerve and mild to moderate carpal tunnel syndrome"; "treating records showed Ramirez's chronic pinched nerve pain and range of motion of the neck were improved with therapy and treatment, and Ramirez had no weakness in either arm"; "a doctor's examination showed that Ramirez's strength, deep tendon reflexes, and sensory exams were normal, so although there was carpal tunnel syndrome, there was no weakness or atrophy"; "a doctor's examination showed that any breathing problems were significantly relieved by medication"; "a CT scan showed only mild emphysema"; "a doctor's examination showed Ramirez was benefiting from the use of an inhaler, and had no chest pain, palpitations, nausea, or vomiting." (Dkt. 5-3 at 16–19). In the Court's view, the ALJ seems to

makes no effort to explain how Ramirez's testimony regarding her pain and limitations is discounted by the medical evidence; he simply lists medical terminology expecting the reader to assume he is correct in his assessment, again without providing any evidentiary support for his synthesis of those medical records.[11]   Furthermore, even the ALJ's characterization of Ramirez's testimony is problematic:

> During the day, the claimant stated that she did nothing.  She stated that she did no chores and had no interests.  She had one friend who visited.  The Administrative Law Judge finds this allegation exaggerated.  Specifically, the claimant does not have a medical impairment that could reasonably be expected to cause such drastic limitations.  If true, the claimant's inactivity is more likely the result of lifestyle or choice.

(Dkt. 5-3 at 19).  This casual dismissal of Ramirez's testimony also suggests that the ALJ never really intended on articulating adequate reasons for discrediting Ramirez's subjective complaints because he did not take the time to fully detail her complaints.

After careful consideration of the ample records documenting Ramirez's limitations, this Court finds that Ramirez's testimony concerning her pain and limitations is supported by uncontroverted medical evidence, and the ALJ failed to adequately articulate his reasons for discrediting her complaints.

---

have cherry-picked isolated statements contained in Ramirez's medical record spanning more than seven years, which would support his conclusion, while openly turning a blind eye to statements that contradict his lay conclusions contained in those same records.

[11] Notably, as discussed above, the ALJ discounted the two opinions of Ramirez's most recent treating medical sources, both of which are remarkably consistent with her testimony.

### D.   THE ALJ'S ERRORS WERE NOT HARMLESS

Although the ALJ erred by improperly evaluating Dr. Khalil and P.A. Tran's opinions and Ramirez's testimony, the Court must still consider whether the errors were harmless.  "In the Fifth Circuit, harmless error exists when it is inconceivable that a different administrative conclusion would have been reached absent the error."  *McNeal v. Colvin*, No. 3:11-CV-02612-BH-L, 2013 WL 1285472, at *27 (N.D. Tex. Mar. 28, 2013) (citations omitted).

As described above, Dr. Khalil found that based on Ramirez's physical limitations, her ability to perform work in a competitive environment on a sustained and ongoing basis (eight hours per day, five days per week) is limited to less than an hour for jobs in a seated position and jobs in a standing and/or walking position; it is likely her symptoms will increase if she is placed in a competitive work environment; in an average eight hour workday, she would frequently (from 1/3–2/3 of an eight hour workday) experience pain, fatigue, or other symptoms severe enough to interfere with her attention and concentration; and she would likely be absent from work at least three days a month. Because the ALJ concluded that Ramirez was capable of performing a range of sedentary work, the vocational expert testified that Ramirez's age, education, and past relevant work, coupled with her physical limitations would preclude Ramirez from engaging in her prior work.  The vocational expert also testified that if the same individual were absent more than three times a month due to those same physical impairments, the individual could not sustain full time competitive employment.  In light of this testimony, the Court finds that the errors described above are material to the ALJ's ultimate finding

of no disability.  If the ALJ had properly considered Dr. Khalil's opinions—i.e., giving them controlling weight—he might have imposed greater restrictions on Ramirez's RFC.[12]  And had the ALJ tracked this more restricted RFC to the vocational expert, a different conclusion might have been reached regarding Ramirez's disability status. Because it is conceivable that the ALJ would have reached a different disability determination had he properly considered Dr. Khalil's opinions, his error was not harmless.

Accordingly, this case must be remanded to the Commissioner for reconsideration of Dr. Khalil's and P.A. Tran's opinions and Ramirez's testimony in accordance with this opinion and applicable law.

## V.  CONCLUSION AND RECOMMENDATION

For the reasons stated above, the Court RECOMMENDS that Ramirez's Motion for Summary Judgment (Dkt. 8) be GRANTED, Defendant Nancy A. Berryhill's Motion for Summary Judgment (Dkt. 16) be DENIED, the decision of the ALJ be REVERSED and the case be REMANDED for reconsideration in accordance with this opinion and applicable law.

The Clerk shall provide copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002–13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

---

[12] The same is likely true regarding P.A. Tran's opinion and Ramirez's testimony.

SIGNED at Galveston, Texas, this 17th day of July, 2018.

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE